# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**THE AUTO PLACE, LLC,**

    **Plaintiff,**

    v.

**JOHN D. CARGILL,**

    **Defendant.**

Case No. 1:19-cv-130

JUDGE DOUGLAS R. COLE

## OPINION & ORDER

This cause comes before the Court on Defendant John D. Cargill's Motion to Dismiss or, Alternatively, to Transfer Venue. (Doc. 4). For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART AS MOOT** Cargill's Motion to Dismiss (Doc. 4) and **DISMISSES WITHOUT PREJUDICE** Plaintiff The Auto Place, LLC's ("AP") Complaint (Doc. 2).

## FACTUAL ALLEGATIONS

AP is an Ohio corporation with its principal place of business in Cincinnati, Ohio. (Pl.'s Compl. at ¶ 1, Doc. 2, #23). Cargill is an individual who lives in Grayslake, Illinois, and owns an automobile frame built by Greenwood Corvettes, as well as related documents regarding the frame's ownership and history (collectively the "Greenwood Frame"). (*Id.* at ¶¶ 2, 3).

In March 2017, AP and Cargill allegedly reached an agreement regarding the sale of the Greenwood Frame (the "Greenwood Agreement") under which "Cargill promised to sell the Greenwood Frame to [AP] for $100,000." (*Id.* at ¶ 4, #23–24). Cargill and AP agreed to use Rick Mancuso of Lake Forest Sports Cars ("LFS Cars")

in Lake Bluff, Illinois, as an intermediary to facilitate the transfer of the Greenwood Frame, due to LFS Cars' proximity to Cargill, as well as AP and Cargill's familiarity with Mancuso. (*Id.* at ¶ 6, #24). AP sent a Contract and Bill of Sale to Cargill. (*Id.* at ¶ 5; *see id.*, Exs. 1, 2, #28–29 (undated)).

AP alleges that, in late-August or early-September 2017, AP sent a check for $100,000 to Mancuso in Lake Bluff, Illinois. (*Id.* at ¶ 6, #24). Around that same time, on September 1, 2017, Chuck Thornton, on behalf of AP, informed Cargill that he had sent a check for $100,000 to Mancuso and explained that Mancuso would handle the transaction. (*Id.* at ¶ 7; *see id.*, Ex. 3, #30).

More than five months later, in February 2018, Cargill told AP that he had never received the Contract or Bill of Sale that AP purportedly had sent via email in 2017. (*Id.* at ¶ 8, #24). Later that month, on February 26, 2018, Stacy Fussner, acting on behalf of AP, called Cargill and left a voicemail indicating that she would send him the contract and bill of sale with revised dates. (*Id.* at ¶ 9). In a follow-up email, Fussner sent those documents to Cargill and urged him to execute them at Mancuso's office at LFS Cars. (*Id.*, Ex. 4, #31). That same day, Cargill responded to AP's representatives with an email that stated, in full, "Chuck, Stacey, thank you for your prompt and professional response … John Cargill." (*Id.*, Ex. 5, #32). On March 15, 2018, Cargill then responded with another email, stating:

> Chuck, Stacey,
>
> No I have not left the country, changed email address or ???????. Waiting to get on Rick[ Mancuso]'s schedule in the near future.

2

> Congrats to Mr. Yeaggy on his Amelia Island award ... truly deserved.
>
> Thanks for your continued patience.
>
> John Cargill.

(*Id.*, Ex. 6, #33).

In its Complaint, AP alleges that Cargill has refused to complete the sale of the Greenwood Frame per the terms of the Greenwood Agreement. (*Id.* at ¶ 12, #25). Based on these allegations, AP asserts a single cause of action against Cargill for breach of contract. (*See id.* at ¶¶ 13–17, #26).

## PENDING MOTION

After removing this case from the Hamilton County Court of Common Pleas to this Court, Cargill now moves to dismiss AP's Complaint on the grounds that this Court lacks personal jurisdiction over him and AP fails to state a claim. (Def.'s Mot. to Dismiss at 1, Doc. 4-1, # 41). In the alternative, Cargill moves the Court to transfer venue to the Northern District of Illinois because the Southern District of Ohio is the improper venue for this action. (*Id.*). The Court finds Cargill's personal jurisdiction argument meritorious and thus limits its analysis to that issue.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal when a court lacks personal jurisdiction over a defendant. The plaintiff bears the burden of establishing by a preponderance of the evidence that the court may properly exercise personal jurisdiction over the defendant. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th

Cir. 2012); *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008) (citing *Brunner v. Hampson,* 441 F.3d 457, 462 (6th Cir. 2006)).

In considering whether personal jurisdiction exists, district courts have discretion to either decide the motion on the pleadings alone, permit discovery in aid of deciding the motion, or conduct an evidentiary hearing to resolve any apparent factual questions. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). Here, the Court can decide Cargill's Motion to Dismiss without a hearing.

Where a Rule 12(b)(2) motion is decided solely on written submissions, the plaintiff's burden is "relatively slight." *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988) (citation omitted). The court must view all of the pleadings and any affidavits in a light most favorable to the plaintiff, and to defeat dismissal, the plaintiff need only make a prima facie showing that personal jurisdiction exists. *Id.*; *Conn*, 667 F.3d at 711. And a court analyzing a 12(b)(2) motion "does not weigh the controverting assertions of the party seeking dismissal." *Theunissen*, 935 F.2d at 1459. The Sixth Circuit has adopted this approach "to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Id.* Yet, when the defendant contests jurisdiction by setting forth facts, the plaintiff cannot merely rest on the allegations in the complaint, but must put forth specific facts, by affidavit or otherwise, that if believed would establish the necessary prima facie showing of jurisdiction. *Id.* at 1458 (citation omitted).

4

When determining whether personal jurisdiction exists over a defendant, federal courts sitting in diversity apply the long-arm statute of the forum state. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). Separately, any exercise of personal jurisdiction over an out-of-state party under such a statute also must comply with the Constitution's due process requirements. *Int'l Techs. Consultants v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997). "Deciding whether jurisdiction exists is not an idle or perfunctory inquiry; due process demands that parties have sufficient contacts with the forum state so that it is fair to subject them to jurisdiction." *Conn*, 667 F.3d at 711. "The court's jurisdiction accordingly extends only to those parties who have in some fashion placed themselves in the hands of the tribunal." *Id.*

## LAW & ANALYSIS

Assessing whether the Court has jurisdiction over Cargill is a two-step process. First, the Court must determine whether Cargill is subject to suit under Ohio's long-arm statute. Ohio Rev. Code § 2307.382. Then, the Court must separately ascertain whether exercising jurisdiction over Cargill comports with the due process requirements of the United States Constitution. *CompuServe*, 89 F.3d at 1262. Jurisdiction arises only if the answer at each step is "yes." Accordingly, if jurisdiction is not proper under the Due Process Clause, the Court need not analyze jurisdiction under Ohio's long-arm statute, and vice-versa. *Conn*, 667 F.3d at 711–12. And the Court is free to address the issues in either order. *See Calphalon Corp. v. Rowlette*, 228 F.3d 721, 724 (6th Cir. 2000). Here, the Court starts with the latter, and finds

that exercising jurisdiction over Cargill would not comport with due process. Hence, the Court need not, and thus does not, analyze personal jurisdiction under Ohio's long-arm statute.

**A.** **AP Fails To Allege Facts Necessary To Show Sufficient Contacts To Support Either General Or Specific Jurisdiction Over Cargill Under the Constitution.**

The Court begins by noting that Cargill's choice to remove this matter from an Ohio state court to this Court (*see* Doc. 1) does not waive his challenge to personal jurisdiction, nor change the jurisdictional analysis. *See Morris & Co. v. Skandinavia Ins. Co.*, 279 U.S. 405, 409 (1929) ("Petitioner suggests that, by removal of the case to the federal court, objection to jurisdiction over the person of respondent was waived. Our decisions are to the contrary." (citing cases)). Accordingly, as with any matter in this Court, the federal Due Process Clause requires that, before the Court exercises jurisdiction over an out-of-state party, the Court must determine that the party had sufficient contacts with the forum state that asserting jurisdiction over the party would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Under the Constitution, personal jurisdiction comes in two flavors: (1) general, which allows for jurisdiction over the out-of-state defendant for all causes of action, whether they arose out of the defendant's contacts with the forum state or not, and (2) specific, which allows for jurisdiction only as to those causes of action that arise out of a defendant's contacts with the forum state. *Id.* Both are absent here.

### 1. AP Cannot Establish General Personal Jurisdiction Over Cargill Because He Is Not "At Home" In Ohio.

The general personal jurisdiction analysis is straightforward. As to individuals, the Due Process Clause provides for general personal jurisdiction only in the state in which the individual is domiciled. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Here AP alleges that Cargill resides in Grayslake, Illinois, (AP Compl. at ¶ 2, #23), and does not suggest that his domicile is elsewhere. Cargill's affidavit likewise states that he resides in Illinois and has never resided in Ohio. Thus, Cargill is not domiciled in Ohio, and so general personal jurisdiction does not exist here.

### 2. AP Cannot Establish Specific Personal Jurisdiction Over Cargill Because He Has Not Purposefully Availed Himself Of The Privilege Of Acting In Ohio And Exercising Jurisdiction Over Cargill Here Would Be Unreasonable.

The question of specific personal jurisdiction still remains. It requires a lesser showing of contacts than general jurisdiction, as the Court's power over the out-of-state defendant in the specific-jurisdiction setting is limited to the causes of action that arise out of those contacts. *Goodyear*, 564 U.S. at 919. Thus, for the Court to exercise specific jurisdiction over a claim there must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Id.*

The Sixth Circuit has adopted a three-part test for determining whether the exercise of specific personal jurisdiction over a defendant comports with due process: (1) the defendant must have purposefully availed himself of the privilege of acting in

the forum state or purposefully caused a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the defendant's acts or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Nationwide Mut. Ins. Co. v. Tryg Int'l Co., Ltd.*, 91 F.3d 790, 794 (6th Cir. 1996) (citing *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). A party seeking to hale an out-of-state defendant into court must establish each of these three elements. Here, AP fails to show at least the first and third requirements.

### a. Cargill Has Not Purposefully Availed Himself Of The Privilege Of Acting In Ohio.

Purposeful availment requires a showing that the defendant's contacts with the forum state "proximately result[ed] from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 463, 475 (1985) (emphasis in original) (citation omitted). This requirement ensures that a defendant will not be "haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts," or based on "unilateral activity of another party or a third person." *Id.* Where a defendant chooses to deliberately engage in significant activities within a state or create continuing obligations between himself and residents of the forum state, however, "he manifestly has availed himself of the privilege of conducting business there." *Id.* at 475–76. Accordingly, if a defendant's efforts are "purposefully directed" toward a given state, then the absence of physical contacts between the defendant and that state would not immunize the defendant from the exercise of personal jurisdiction there. *Id.* at 476.

8

There are two reasons the Constitution's Due Process Clause requires such contacts as a prerequisite to a court exercising power over an out-of-state defendant. First, "[i]t protects the defendant against the burdens of litigating in a distant or inconvenient forum." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). Second, it protects the defendant against attempts by states to "reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *Id.* Plus, practically speaking, if a defendant has purposefully availed itself of the protection of the forum state, it "has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to consumers, or, if the risks are too great, severing its connection with the State." *Id.* at 297.

Here, AP argues that Cargill purposefully availed himself of the forum state (i.e., Ohio) by directing his activities *at a resident* of that forum. (Memo. in Opp'n at 8, #64). For the following reasons, though, AP's argument fails as a matter of law.

It is well settled that the mere existence of a contract between an out-of-state defendant and a domiciliary of the forum state is not enough to show purposeful availment. *Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). AP (an Ohio domiciliary) does not argue otherwise here. Rather, AP points to alleged contacts with Ohio resulting from Cargill's acts surrounding the Greenwood Agreement, such as communications undertaken in negotiating the

9

agreement, communications with AP in Ohio via email about his plans to execute the contract, and directing his lawyer to notify AP (again in Ohio) that Cargill had concluded that the two had never entered an agreement.

To be sure, under Sixth Circuit precedent, discussion of these types of acts relating to contract formation, and where those acts occurred, certainly serves as an appropriate starting point for the jurisdictional analysis. *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 482 (6th Cir. 2003) (citing *Tryg Int'l*, 91 F.3d at 795). But that being said, the Sixth Circuit has also held that the mere fact that an out-of-state party had contacts with an in-state party as part of negotiating an agreement with that party "is not of controlling significance." *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1300 (6th Cir. 1989). Rather, such contacts often amount to "precisely the sort of 'random,' 'fortuitous' and 'attenuated' contacts that the *Burger King* Court rejected as a basis for haling non-resident defendants into foreign jurisdictions." *Id.* at 1300–01. Determining whether these sorts of pre-contractual or contractual communications suffice to give rise to jurisdiction requires the Court to undertake a holistic analysis of the totality of the circumstances surrounding the contract negotiations, the contemplated future consequences under the contract, the contract's terms, and the parties' actual course of dealing, and then to determine whether these circumstances, as a whole, show that the defendant purposefully undertook sufficient contacts to show a "substantial relationship" with the forum state. *Tryg Int'l*, 91 F.3d at 795 (quoting *Burger King*, 417 U.S. at 479).

With that in mind, consider AP's argument for purposeful availment: it claims that Cargill can be properly haled into court here because he "knowingly negotiated with and entered into an agreement with [AP], an Ohio corporation … ." (*Id.*). But that misses the point. "[T]o create personal jurisdiction, out-of-state defendants must purposefully avail themselves of—that is, they must choose to direct their activities toward—the forum state." *Baker v. Bensalz Prods., Inc.*, No. 1:18-cv-757, 2020 WL 1083606, *9 (S.D. Ohio March 6, 2020) (Cole, J.). Simply put, then, the question is whether the defendant intended to purposefully avail himself of the privilege of acting *in the forum state*. If, on the other hand, a defendant chooses to direct his activities toward *a particular person*, who merely happens to reside in the forum state, that is not enough. *Id.*

Admittedly, this can sometimes be a close call. But the question amounts to this: did the defendant intend to negotiate with an Ohio resident, or did the defendant intend to negotiate with a given person who, it turns out, happened to reside in Ohio? For example, if a party determines that it wants to contract with an Ohio resident because that would make it easier to capitalize on a market in Ohio, or that it wants to contract with an Ohio resident to take advantage of the favorable tax treatment that Ohio would then afford to the transaction at issue, such a party would be intending to avail itself of Ohio as a forum. But, if a party instead seeks to enter a contract with a Corvette aficionado, and that aficionado just happens to live in Ohio, that would not be enough. *See LAK*, 885 F.2d at 1300. Yet the latter is all that AP alleges as to Cargill here. There is nothing in the Complaint, or the opposition to the

11

motion to dismiss and its attached declaration (*see* Thorton Decl,, Doc. 5-1, #68–70), that in any way suggests that AP being a resident of Ohio was in any way material to, or even a consideration in, the alleged Greenwood Agreement. Thus, Cargill's contacts with AP, even as characterized by AP itself, constitute exactly the sort of random, fortuitous, and attenuated contacts that do not suffice to show purposeful availment. *Id*.

> **b.   Based On AP's Allegations Here, Exercising Jurisdiction Over Cargill Would Be Unreasonable.**

The third element that Sixth Circuit precedent requires a party to show to satisfy the Due Process Clause inquiry is that exercising personal jurisdiction over Cargill would be "reasonable." *See Southern Mach.*, 401 F.2d at 381. While that term is admittedly amorphous, it is well-established that an individual's contract with an out-of-state party *alone* cannot automatically establish sufficient minimum contacts in the other party's home forum. *Burger King*, 471 U.S. at 478. And, more specifically in the context of reasonableness, the Sixth Circuit has found that subjecting an out-of-state defendant to suit in Ohio simply because the defendant contracted with an Ohio resident "would be far from reasonable." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 152 (6th Cir. 1997).

In an effort to address the inherent vagueness of "reasonable," the Supreme Court has instructed that the inquiry into this prong should consider the following factors: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution

of controversies; and (5) the shared interest of the States in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 477 (citing *World-Wide Volkswagen*, 44 U.S. at 292).

Here, considered as a whole, these five factors suggest that the exercise of personal jurisdiction over Cargill would be unreasonable. While AP admittedly has an interest in obtaining relief by litigating in Ohio (element three), the burden on Cargill to litigate here is high (element one). Plus, Ohio has no particular cognizable interest in adjudicating the dispute (element two). Although Ohio certainly has interest in protecting its residents from harm (such as AP alleges here), that interest is present in any case involving an Ohio plaintiff. But, beyond that generalized interest, this case does not present any novel questions of Ohio law or important recurring issues within the state. Moreover, the interstate judicial system's interest in efficiency does not counsel strongly in favor of adjudicating this case in Ohio more than anywhere else (element four), and the parties have not presented, or frankly even suggested, any "shared interest of the States" as to "fundamental substantive social policy" with regard to the dispute at issue in this case (element five). Therefore, based on AP's single breach of contract claim and the paucity of Cargill's alleged contacts here, it would not be reasonable for this Court to exercise jurisdiction over him.

## CONCLUSION

For the reasons above, the Court holds that it lacks personal jurisdiction over Cargill; the Court therefore also finds his Motion to Dismiss regarding the failure to

state a claim and transfer of venue is moot. Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART AS MOOT** Cargill's Motion to Dismiss (Doc. 4) and **DISMISSES WITHOUT PREJUDICE** AP's Complaint (Doc. 2).

    SO ORDERED.

April 7, 2020
**DATE**

    **DOUGLAS R. COLE**
    **UNITED STATES DISTRICT JUDGE**